# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HEATHER LANCASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 1698 |
| ) | |
| TRANS UNION, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the court is defendant's motion for summary judgment, which is granted for the reasons explained below.

**BACKGROUND**

Plaintiff, Heather Lancaster, sues Trans Union, LLC ("Trans Union"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. The case arises from allegedly inaccurate information that appeared on Lancaster's Trans Union credit report regarding a credit card account with Discover Financial Services ("Discover").[1]

Plaintiff alleges that Trans Union violated § 1681i(a) of the FCRA by negligently failing to conduct a proper and reasonable reinvestigation concerning the allegedly inaccurate information after receiving notice of the dispute from both plaintiff and

---

[1] Discover is not a party to this action.

Discover; by negligently failing to review and consider all relevant information submitted by plaintiff and Discover; and by negligently failing to delete the inaccurate information from plaintiff's credit report after reinvestigation. Plaintiff also alleges that Trans Union violated § 1681i(c) of the FCRA by negligently failing to note her dispute in subsequent credit reports.[2]

Trans Union moves for summary judgment.

## DISCUSSION

**A.  Summary Judgment Standards**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for

---

[2]  The complaint also includes a claim for violation of § 1681e(b) of the FCRA for failure to follow reasonable procedures to assure the maximum possible accuracy of plaintiff's credit report, but plaintiff indicates in her brief in opposition to defendant's motion that she "voluntarily withdraws" this claim. The complaint also alleges that Trans Union's conduct was willful, but plaintiff indicates in her brief that she withdraws her request for punitive damages. (Pl.'s Resp. at 11.)

the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995). Once the moving party has supported its motion for summary judgment, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## B. Relevant Facts

### The Discover Account

In April 1999, Chad Mullen opened a Discover credit card account that was assigned account number 8527 (the "Account"). At all relevant times, Lancaster was engaged to and lived with Mullen.

On July 5, 2007, Discover added Lancaster to the Account as an "authorized buyer;" according to Discover, an authorized buyer has full charging privileges but is not responsible for repayment of any debts incurred on an account. Citing correspondence from Discover to Mullen (which is attached to the Complaint as Exhibit A), Trans Union maintains that Lancaster was designated as an authorized buyer at Mullen's request. Mullen testified at his

deposition that he did not ask Discover to add Lancaster to the Account as an authorized buyer, but admitted that he did contact Discover to request that it allow Lancaster to "speak on [his] behalf" with respect to the Account and that although he did not know it at the time, Discover required that plaintiff be added as an authorized buyer before she would be allowed to discuss the Account with Discover. (Def.'s Rule 56.1 Statement, Ex. C, Dep. of Chad Mullen at 34-35, 40.) Plaintiff contends that she merely wanted to be able to speak with Discover on Mullen's behalf and did not want to be an authorized buyer, but admits that Mullen requested that Discover allow her to speak on his behalf and that Discover "translated that into being an authorized user." (Def.'s Rule 56.1 Statement, Ex. D, Pl.'s Dep. at 30-32.) Plaintiff also admits that she or Mullen provided Discover with her personal identifying information, including her social security number, when they requested that she be able to speak on Mullen's behalf. (Pl.'s Dep. at 31.) After Discover made Lancaster an authorized buyer, plaintiff acknowledges that she contacted Discover to discuss the Account and that she possibly might have made payments on Mullen's behalf from their joint checking account.

On September 28, 2007, Mullen received a letter from Discover in response to inquiries Lancaster had recently made about the Account. The letter stated that the Account had been closed to further purchases in March 2005 and that a third-party entity had

made a payment arrangement with Discover on Mullen's behalf, but that Discover had not received the agreed-upon payments and had therefore canceled the agreement. It stated that Lancaster had been added to the Account as an authorized buyer on July 5, 2007 and that at Lancaster's request, Discover had removed her from the Account on September 28, 2007. Furthermore, the letter stated: "Updates were sent to the major credit bureau reporting agencies requesting the removal of the account from Ms. Lancaster's credit file. Please allow a reasonable amount of time for the updates to reflect on her credit file." (Compl., Ex. A, at 1.)

Notwithstanding this representation, Discover did not contact Trans Union at that point to request removal of the Account from Lancaster's credit report.[3] Trans Union began reporting the Account as an authorized account on Lancaster's credit file[4] in early November 2007. At all relevant times, Discover reported to Trans Union that Lancaster was authorized on the Account, that there had been several late payments on it, a balance of $2400, a past-due amount of $97, and the remark "acct closed by credit grantor." Discover did not direct Trans Union to remove the

---

[3] Plaintiff admits that the the only instance in which Discover communicated with Trans Union to request that Trans Union remove the Account from plaintiff's credit file was on December 17, 2008, and that Trans Union complied with that request the following day. (Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶¶ 78-80.) This admission removes as a basis for plaintiff's claim any alleged communications between Discover and Trans Union concerning the Account, see Compl. ¶ 22(c), (e).

[4] We use the terms "credit report" and "credit file" interchangeably.

Account from Lancaster's credit file until December 17, 2008. On December 18, 2008, Trans Union processed the request and stopped reporting the Account on Lancaster's file.

**Plaintiff's Communications with Trans Union**

On June 21, 2007, Lancaster requested and was e-mailed a free copy of her credit report. At this time, the Discover account was included on her report (Discover did not designate Lancaster as an authorized buyer until the following month), but the report did contain several other adverse accounts. The same day, Lancaster (via the internet) initiated a dispute with Trans Union ("the Unrelated Dispute") requesting an investigation of three of the adverse accounts. Trans Union investigated and on July 19, 2007 sent Lancaster the results of its investigation. Two of the accounts were updated, and one was deleted from her file. The Unrelated Dispute is not the subject of this lawsuit.

On April 30, 2008, plaintiff again requested (via telephone) and was sent a copy of her Trans Union consumer disclosure. By that time, the Discover account appeared on the report. Nearly six months later, on October 16, 2008, Lancaster again requested, and was e-mailed, a copy of her Trans Union consumer disclosure. The Account still appeared on the report.

Trans Union states that it has thoroughly searched its records and has no record of receiving notice of any dispute by Lancaster concerning the reporting of the Account on her credit file.

Discover also has no record of receiving notice from Trans Union or Lancaster regarding a Trans Union investigation of the Account in relation to Lancaster. Lancaster, however, has filed an affidavit stating: "In or around December, 2007, or January 2008, I disputed the Discover Financial Services account with Defendant via an online submission" and "In or around September, 2008, I disputed the account by mail." (Pl.'s Rule 56.1 Statement, Ex. A, Pl.'s Aff. ¶¶ 4, 12.) She "did not save any emails or letters" she sent to dispute the reporting of the Account. (Pl.'s Aff. ¶ 19.)

Lancaster further states that she received correspondence from Trans Union with the results of its investigations via electronic mail in January 2008 and via U.S. mail in October 2008. (Pl.'s Aff. ¶¶ 10, 14.) Trans Union, on the other hand, has no record of any correspondence with Lancaster regarding the Account. Plaintiff has produced two "copies" and two "originals" of the correspondence she claims to have received from Trans Union. Trans Union contends that these documents are fraudulent and that Lancaster fraudulently created them by cobbling together portions of Trans Union's correspondence with Mullen and portions of Trans Union's correspondence with Lancaster regarding the Unrelated Dispute. Trans Union has hired a forensic document examiner, who opines that there is a "strong probability" that one of the documents produced by plaintiff has been altered and cannot reach a conclusion as to the other three documents. (Def.'s Rule 56.1 Statement, Ex. W,

Report of Meredith DeKalb Miller, at 9-10). Plaintiff denies that she altered or created any documents relating to Trans Union or the Discover account. (Pl.'s Aff. ¶¶ 24-27.)

**C.   Plaintiff's § 1681i(a) Claims**

The FCRA provides that

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). A credit reporting agency that negligently violates the FCRA is potentially liable for "actual damages," costs, and attorney's fees. 15 U.S.C. § 1681o. Plaintiff must show that she "suffered damages as a result of the inaccurate information." Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 608 (7th Cir. 2005). "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages." Id. (internal quotation marks omitted).

Even if we assume, *arguendo,* that the information Trans Union reported regarding the Account was inaccurate, that Lancaster notified Trans Union of a dispute, and that Trans Union failed to

investigate her dispute, Lancaster has failed to show that she suffered damages as a result of the Account appearing on her credit report.

Lancaster admits that she was never denied credit or prohibited from making any purchases because of a Trans Union credit report. She also admits that she has no evidence that Trans Union furnished a credit report containing the Account to any third party. (Pl.'s Resp. to Def.'s Rule 56.1 Statement, ¶¶ 81-83.) She claims that she suffered damages in the form of a higher interest rate on a car loan from Cornerstone Credit Union ("Cornerstone") that she and Mullen applied for and obtained in 2008.[5] Yet Lancaster admits that Cornerstone did not give her an explanation for the interest rate that she and Mullen received, and she has no documentation explaining its basis. She claims that she qualified for a better interest rate but has no evidence to support this claim and does not know what that rate would have been. She admits that she does not know whether Cornerstone reviewed a Trans Union credit report to make its credit decision, that she was never told that the rate she received was based on a Trans Union credit report, and that Cornerstone did not refer to the Discover account during the loan application process. She admits that at the time

---

[5] At one point in the litigation, plaintiff also may have claimed that Trans Union's reporting of the Account caused her to obtain an unfavorable interest rate on a 2007 student loan. In her response to Trans Union's statement of material facts, however, plaintiff states that she is "not seeking damages regarding a higher interest rate" on the student loan. (Pl.'s Resp. to Def.'s Rule 56.1 Statement, ¶¶ 91-100).

she applied for the Cornerstone loan, there were at least eight accounts (besides the Discover account) on her credit report that were classified as adverse or delinquent. She also admits that at the time, the Account was listed on the credit report of Mullen, her co-applicant, and that Mullen had a adverse credit history that was "worse" than hers. (Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶¶ 103-113.) Nevertheless, plaintiff (inconsistently) denies the following statement: "Plaintiff has no evidence to demonstrate that she was entitled to a different interest rate than what she received, no documentation to show that the reporting of the Account impacted her rate, and no evidence to show that the terms were based on a Trans Union report." (Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 114.) In support of her disagreement with this statement, plaintiff vaguely cites to Exhibit B to the complaint without explaining what Exhibit B is and without presenting any argument regarding Exhibit B in her response brief. Exhibit B to the complaint is an unidentified, largely illegible document. It is unclear who issued the document, and in any event, it does not support plaintiff's position. Her claim for damages in relation to the interest rate on the Cornerstone car loan is entirely speculative and without support.

Plaintiff also claims that she "undoubtedly" suffered out-of-pocket expenses associated with her alleged attempts to dispute the reporting of the Account. (Pl.'s Resp. at 8.) At her deposition,

when asked for an estimate of her expenses incurred in relation to the dispute, plaintiff stated: "I really don't know. Maybe--$20 maybe. For the paper and stamps and--little stuff like that." (Pl.'s Dep. at 128-29.) She admits that she does not have receipts for these expenses.

Expenses incurred simply to notify a credit reporting agency of an error, and not to force compliance with a specific provision of the FCRA, are not compensable as actual damages for a violation of the FCRA. Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995). Plaintiff's vague and unsupported guess about her expenses, without specification as to whether they were incurred to force compliance with the FCRA as opposed to notifying Trans Union of a dispute, is not competent evidence of damages.

Plaintiff also fails to come forth with sufficient evidence of any emotional distress.[6] The Seventh Circuit has "a strict standard for a finding of emotional damage" because it is so "easy to manufacture." Ruffin-Thompkins, 422 F.3d at 609. The circumstances of an emotional injury must be explained in reasonable detail, and a plaintiff cannot rely on conclusory statements. Id. Lancaster admits that she has not sought medical, psychiatric, or psychological treatment for her alleged distress.

---

[6] Aside from citing case law for the general proposition that damages for emotional distress are recoverable for violations of the FCRA, plaintiff does not even argue in her response brief that she is entitled to damages for emotional distress, but she did claim emotional distress in interrogatory answers. We address the issue because she does not affirmatively state that she abandons her claim for these damages.

(Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 121.) All we have is her conclusory interrogatory response that she experienced emotional distress and mental anguish, and Mullen's speculation, which he was unable to tie to Trans Union in particular, that Lancaster was "upset, depressed, I guess." (Mullen Dep. at 82-83.) Plaintiff does not satisfy the Seventh Circuit's high threshold for proof of damages for emotional distress.

Because plaintiff has failed to produce evidence of damages that can be attributed to Trans Union, Trans Union's motion for summary judgment on the § 1681i(a) claim will be granted, and we need not address Trans Union's myriad other arguments as to this claim.

### D.  **Plaintiff's § 1681i(c) Claim**

The complaint includes an allegation that Trans Union violated 15 U.S.C. § 1681i(c) by failing to note Plaintiff's "dispute of the inaccurate information and in subsequent consumer reports." (Compl. ¶ 22(g).) Section 1681i(c), which relates to a consumer's right to add to her file a brief statement setting forth the nature of a dispute in the event that a reinvestigation does not resolve a dispute, see § 1681i(b), states:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

One of the showings plaintiff must make to succeed on this claim is that she filed a statement of dispute with Trans Union upon completion of its reinvestigation (which plaintiff asserts resulted in a verification of the Account).  See Quinn v. Experian Solutions, No. 02 C 5908, 2004 WL 609357, at *7 (N.D. Ill. Mar. 24, 2004).  But she admits that she did not add a consumer statement to her Trans Union credit file at any time.  (Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 64.)  And in plaintiff's response brief, she makes no attempt to defend her § 1681i(c) claim.  Accordingly, defendant's motion for summary judgment will be granted on this claim as well.

## CONCLUSION

For the reasons explained above, the motion of defendant Trans Union, LLC for summary judgment [34] is granted.


DATE:        November 4, 2010


ENTER:       _____
             John F. Grady, United States District Judge