## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

HEATHER LANCASTER,               )
                                 )
          Plaintiff,             )
                                 )
          v.                     )          No. 09 C 1698
                                 )
TRANS UNION, LLC,                )
                                 )
          Defendant.             )


### MEMORANDUM OPINION

Defendant has filed three motions for sanctions.  For the reasons explained below, defendant's motion for attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and 15 U.S.C. §§ 1681n and 1681o is granted in part and denied in part, and defendants' remaining motions are denied as moot.

### BACKGROUND

Heather Lancaster brought this action against Trans Union, LLC ("Trans Union"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.  Plaintiff alleged that Trans Union reported inaccurate information on her credit report regarding her boyfriend's credit card account with Discover Financial Services ("Discover").  Early in the pendency of this case, Trans Union took the position that plaintiff's claims were frivolous and sought sanctions on the basis that plaintiff was

supporting her claims with fraudulently-altered documents. We denied the sanctions motion as premature. Trans Union also had difficulty obtaining plaintiff's full compliance with her discovery obligations; in March 2010, we granted a motion to compel full document production. Trans Union then filed a motion for summary judgment, which we granted. We assumed, without deciding, that Trans Union had reported inaccurate information and found that plaintiff had failed to come forward with evidence that the appearance of the Discover account on her credit report caused her any damage. We found it unnecessary to reach Trans Union's other arguments for the entry of summary judgment (among which was its argument that plaintiff fraudulently created and produced the documents that allegedly demonstrated her correspondence with Trans Union).

Trans Union has now brought three motions for sanctions, two of which are renewed motions for sanctions under Rule 37 and Rule 11. The third motion, which we will discuss, is for attorneys' fees and costs under 28 U.S.C. § 1927 and 15 U.S.C. §§ 1681n and 1681o.

## DISCUSSION

### A. 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." In re TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985). In the Seventh Circuit, the moving party must show subjective bad faith "only if the conduct under consideration had an objectively colorable basis." Dal Pozzo v. Basic Mach. Co., 463 F.3d 609, 614 (7th Cir. 2006). Otherwise, objective bad faith is the standard, and it does not require a finding of malice or ill will; reckless indifference to the law is sufficient. Id.

Trans Union argues that the filing of this suit was frivolous because it should have been clear to plaintiff's counsel from the outset that the case was frivolous in that there was no evidence of causation or damages. Trans Union also contends that plaintiff's counsel wrongfully continued to pursue the case up through summary judgment and failed to dismiss the frivolous claims even after plaintiff made several fatal admissions at her deposition sessions.

Were plaintiff's claims objectively colorable? We think not. First, let us review the complaint. It contains one count for violations of § 1681e(b), § 1681i(a), and § 1681i(c) of the FCRA, and alleges that plaintiff was damaged in the following ways:

> a. Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report;

   b.  Decreased credit score resulting in higher interest
   rates on extended lines of credit (*see* Exhibit B);
   c. Emotional distress and mental anguish associated with
   having incorrect derogatory personal information
   transmitted about Plaintiff to other people both known
   and unknown.

(Compl. ¶ 20.)  The prayer for relief seeks statutory, actual, and

punitive damages.

     Trans Union points out that as the case progressed, plaintiff's

counsel never provided it with any calculation of damages.  Federal

Rule of Civil Procedure 26(a)(1)(A)(iii) requires that plaintiff

provide to defendant as part of the initial disclosures "a

computation of each category of damages claimed" and make available

the supporting documentation.  Plaintiff did not provide a

computation or any documentation; instead, counsel simply repeated

the categories of damages sought, as set forth in the complaint.

Similarly, in response to Trans Union's interrogatory that asked

plaintiff for a complete description and calculation of damages,

plaintiff's counsel merely provided a vague list of damages

categories without any of the requested details, calculation, or

documentation.

     In plaintiff's opposition brief to Trans Union's motion for

summary judgment, plaintiff "voluntarily withdr[ew]" her § 1681e(b)

claim.  She made no attempt to defend her § 1681i(c) claim and

admitted that she did not add a consumer statement to her Trans

Union credit file at any time, so that claim fell away.  Plaintiff

also withdrew her request for punitive damages, which are available

only for willful noncompliance with the FCRA, see 15 U.S.C. § 1681n.
Plaintiff did not explicitly withdraw her request for statutory
damages, but they are available only for willful violations of the
FCRA under § 1681n, and she did not argue or produce any evidence
that there was a willful violation of the FCRA. Thus, only a §
1681i(a) claim remained, and even that claim was narrowed by
plaintiff's statement that she was not seeking damages relating to
a student loan, just a car loan.

Plaintiff was left with a claim for actual damages for
negligent noncompliance. There were three components to the damages
claim: the payment of a higher interest rate on the car loan; out-
of-pocket expenses; and emotional distress. We discussed each
element in our opinion and found no evidence that would reasonably
permit a jury to find in plaintiff's favor. Lancaster v. Trans
Union, LLC, No. 09 C 1698, 2010 WL 4625345, at *3-4 (N.D. Ill. Nov.
4, 2010). With respect to emotional distress, plaintiff's counsel
did not point to any evidence in the record--other than a vague and
conclusory interrogatory response and plaintiff's boyfriend's
speculation--that plaintiff had in fact suffered any emotional
distress. Plaintiff also lacked sufficient evidence of out-of-
pocket expenses incurred to force Trans Union's compliance with the
FCRA. She testified at her deposition that she "really d[id]n't
know" how much she had spent--"maybe" $20--and did not specify
whether the expenses had been incurred to simply notify Trans Union

of a dispute, which would not have been compensable as damages, or whether they were incurred to obtain compliance with the FCRA.

As for the car loan, we found the claim for damages in relation to the interest rate "entirely speculative and without support." Id. at *3. Plaintiff admitted at her deposition that the lender did not give her an explanation of the interest rate that she received and did not refer to the Discover account and that she did not know whether the lender even reviewed her Trans Union credit report. Nevertheless, plaintiff denied that she had "no evidence to demonstrate that she was entitled to a different interest rate than what she received, no documentation to show that the reporting of the Account impacted her rate, and no evidence to show that the terms were based on a Trans Union report." (Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 114.)  Plaintiff based this denial solely on Exhibit B to the complaint, without identifying Exhibit B or explaining how it supported her denial of the statement.  As discussed in our opinion, Exhibit B is a largely illegible document. Plaintiff's name appears on it and it relates to a loan, but it is unclear who issued the document.  In any event, the document in no way supports plaintiff's claim for damages in relation to the interest rate on the loan.

In response to Trans Union's motions for sanctions, plaintiff filed a consolidated response in which counsel contends that "[b]ased on plaintiff's representations, at no time during the

course of this matter did Plaintiff's attorneys believe that
Plaintiff did not have any cognizable damages." (Pl.'s Resp. at 2.)
The response also states: "[T]hroughout this case, Plaintiff's
attorneys maintained the belief that Plaintiff suffered actual,
cognizable economic damages under the FCRA . . . . Plaintiff's
attorneys relied upon Plaintiff's representations and current case
law." (Pl.'s Resp. at 10.)

Regarding plaintiff's counsel's pre-filing inquiry as to
damages, the response brief states:

> In support of a claim for actual damages, Plaintiff
> provided her attorneys with a document referencing the
> unfavorable interest rate from Cornerstone, which was
> believed to be a direct result from Defendant's reporting
> of the [Discover] account. *See* Ex. A. Plaintiff also
> informed [sic] that she suffered some emotional distress
> as a result of the continued reporting of an account
> which she was not liable for. *See* Exhibit A.

(Pl.'s Resp. at 2.) Exhibit A is plaintiff's declaration, in which
she states: "I provided my attorneys with a document which I
believed referenced an unfavorable interest rate from Cornerstone,
which I believed was a direct result of Defendant's reporting of
the account." (Pl.'s Resp., Ex. A, Pl.'s Decl. ¶ 5.) Plaintiff
does not provide any basis for her belief that the rate was a
"direct result" of the reporting of the account. She also states:
"I was upset and distressed as a result of the continued reporting
of an account which I was not liable for." (Pl.'s Decl. ¶ 6.)

One of plaintiff's attorneys, Adam T. Hill, also filed a
declaration, which is attached to the response as Exhibit B. Mr.

Hill fails to discuss counsel's pre-filing inquiry. Regarding the issue of damages, he merely states (without referring to a time period): "I . . . discussed damages with Plaintiff and believed Plaintiff to have suffered cognizable damages, and continued to believe as a result of Plaintiff's affirmations." (Pl.'s Resp., Ex. B, Decl. of Adam T. Hill ¶ 7.) Adam J. Krohn, the attorney who filed the complaint on plaintiff's behalf, did not file any declaration.

It does not appear that plaintiff's attorneys conducted any pre-filing investigation as to the sufficiency of two components of plaintiff's claimed damages, emotional distress and out-of-pocket expenses. Plaintiff was never able to explain any emotional injury in detail, as required for a finding of emotional damage, and she admitted that she had not sought any treatment for her alleged distress. Similarly, plaintiff could never do more than venture a guess about her out-of-pocket expenses, and she could not specify any expenses that had been incurred to force compliance with the FCRA. But those elements of damages seem to be tag-alongs. In our view, the crux of the damages issue is the purported evidence of a higher interest rate on the car loan--Exhibit B to the complaint. As discussed above, at the summary judgment stage, plaintiff's counsel relied on Exhibit B without explanation. Incredibly, they continue to rely on it in opposition to the instant motion without explaining what the document is:

> In her Verified Complaint, Plaintiff attached as an exhibit documentation evidencing actual damages, illustrating how the decreased credit score resulted in higher interest. Unfortunately, this was the only documentation Plaintiff was able to locate. While this Court found the document speculative and without support, the evidentiary ruling regarding damages cannot suggest that Plaintiff's attorneys did not believe Plaintiff to have suffered actual damages.

(Pl.'s Resp. at 12.)

It is noteworthy that the response refers to Exhibit B as "documentation." Evidently, counsel use this vague term because they do not know what the document is and have never bothered to find out. They have relied on the document from the very beginning of this case as evidence of damages without any basis for doing so. Exhibit B does not "evidenc[e] actual damages," nor does it "illustrat[e] how the decreased credit score resulted in higher interest," and we find it disingenuous and reckless for counsel to persist with this argument even as they are unable to provide a simple description of the document. We also find it significant that plaintiff's attorneys have avoided filing any declarations that describe their pre-filing inquiry. Mr. Hill states that he at some point "believed" plaintiff to have "suffered cognizable damages," but fails to identify or discuss the basis for his belief. We can only conclude that plaintiff never had a colorable claim for damages caused by a Trans Union FCRA violation. Ascertaining whether plaintiff suffered actual damages as a result of Trans Union's reporting of the Discover account would have been

easy to do with minimal fact investigation, but plaintiff's counsel failed to do that.  The filing of this case, as well as the continued pursuit of plaintiff's claims (particularly after plaintiff's deposition was conducted, at which she made several damaging admissions), was unreasonable and vexatious.  Pursuant to 28 U.S.C. § 1927, plaintiff's counsel will be sanctioned for the full amount of reasonable attorneys' fees and costs incurred by Trans Union in this case.

Three attorneys at Krohn & Moss--Mr. Krohn, Mr. Hill, and Alicia S. Mandolini--filed appearances in this case for plaintiff. A review of the docket and filings shows that Ms. Mandolini was only peripherally involved in the case, and we find that she did not engage in sanctionable conduct under § 1927.  Mr. Krohn, on the other hand, filed the complaint without performing an adequate pre-filing inquiry and without having a basis for claiming causation or damages.  Mr. Hill recklessly continued to pursue the action, which included filing a baseless response to Trans Union's motion for summary judgment.  Moreover, Mr. Hill and Mr. Krohn filed a baseless response to the instant motion for sanctions. Accordingly, we will impose sanctions against Mr. Krohn and Mr. Hill.

Given our finding that Trans Union is entitled to its attorneys' fees and costs as a sanction against plaintiff's counsel under § 1927, we need not address its argument that we should

impose sanctions on plaintiff's counsel based on the inherent power of this court.

## B.    15 U.S.C. §§ 1681n and 1681o

Trans Union also seeks sanctions against plaintiff herself pursuant to the fee-shifting provisions of the FCRA, 15 U.S.C. §§ 1681n(c) and 1681o(b), as well as the inherent power of this court, based on plaintiff's "complete inability to produce any evidence supporting her alleged causation, damages, inaccuracy, or uncoverable factual inaccuracy at numerous stages of the litigation" and her attempts to support her claims based on fraudulently-altered documents. (Def.'s Mem. in Supp. of § 1927 Mot. at 13, 14.)

We entered summary judgment against plaintiff based on her failure to set out facts showing that there was a genuine issue for trial as to causation and damages.  To save judicial resources, we did not decide the question of whether Trans Union's reporting was inaccurate.  And, although we suspect based on the evidence submitted by Trans Union that plaintiff did submit at least one fraudulently-altered document to opposing counsel and to the court, we did not resolve the issue.  Its resolution was unnecessary and would have entailed a significant expenditure of this court's time. For purposes of judicial economy, we decline to consider the issue at this juncture as well.  The question, then, is whether we should sanction plaintiff based on the fact that she lacked, from the very

beginning, evidence of causation and damages. The law of recoverable damages under the FCRA is not something that we expect a non-lawyer litigant to know. In any event, it appears to the court that plaintiff likely would not be able to pay a monetary sanction. We therefore decline to impose sanctions on plaintiff herself. Plaintiffs' counsel, however, who recklessly filed and continued to litigate this case, will be on the hook for all of Trans Union's reasonable attorneys' fees and costs, and we believe that sanction will suffice (and will likely be collectible). In light of our ruling, which awards Trans Union all of its reasonable fees and costs incurred as a result of plaintiff's counsel's misconduct, we need not reach Trans Union's two remaining motions for sanctions.

## CONCLUSION

For the reasons explained above, the motion of defendant Trans Union, LLC for attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and 15 U.S.C. §§ 1681n and 1681o [51] is granted in part and denied in part. We decline to impose sanctions against plaintiff Heather Lancaster under 15 U.S.C. §§ 1681n and 1681o or the inherent power of the court. However, we hold that plaintiff's counsel, Adam J. Krohn and Adam T. Hill, are responsible for Trans Union's fees and costs pursuant to 28 U.S.C. § 1927, and are jointly and severally liable for this award. Trans Union's motions

for Rule 37 discovery sanctions and for Rule 11 discovery sanctions [48, 54] are denied as moot.

The parties are directed to confer and attempt informally to agree on an amount of reasonable attorneys' fees and costs by September 13, 2011. If they are able to reach agreement, defendant should notify the court and submit by that date an appropriate proposed order setting forth the agreed amount of attorneys' fees. If the parties cannot reach agreement by September 13, 2011, then they should follow the procedures set out in Local Rule 54.3, with September 14, 2011 being the start of the 91-day clock for the filing of a fee motion.

DATE:        August 16, 2011

ENTER:      _____

John F. Grady, United States District Judge